***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of Deputy Commissioner Harris.
 *********** EVIDENTIARY MATTERS
On December 3, 2009, 40 days after the hearing before the Deputy Commissioner, Defendants moved to compel Plaintiff to present for an independent medical examination with a pain management specialist and for an extension of time to close the record so that such specialist and Dr. Kataru, a primary care provider for Plaintiff, could be deposed. The Deputy *Page 2 
Commissioner denied said motions, and Defendants noted their exception to the ruling.
On July 22, 2010, Defendants filed a motion to reopen the record and receive additional evidence, including an independent medical evaluation of Plaintiff with a pain management specialist, deposition of the pain management specialist, and nurse case management records. In the discretion of the Full Commission, Defendants' motion is hereby DENIED.
 *********** ISSUES 1. Is Plaintiff's current low back condition is related to his compensable injury?
 2. Is Plaintiff entitled to additional medical compensation including surgery?
 3. Does Plaintiff remain entitled to temporary total disability compensation?
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. This is an accepted claim for a low back injury with an injury date of July 3, 2007.
2. All parties are properly added and before the Industrial Commission, and the Commission has jurisdiction over the parties and of the subject matter.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. An employee-employer relationship existed between Plaintiff and Defendant-Employer during all times relevant to this claim.
5. Penn National Insurance Company was the carrier on the risk at the time of *Page 3 
6. Plaintiff's injury.
7. All parties are bound by and subject to the North Carolina Workers' Compensation Act.
8. Plaintiff's average weekly wage at the time of his injury was $431.76, resulting in a weekly compensation rate of $287.85.
9. Defendants accepted this claim when a Form 63 (Notice to Employee of Payment of Compensation without Prejudice) was filed on or about August 17, 2007 and no subsequent denial was filed or otherwise issued during the time period allowed by N.C. Gen. Stat. § 97-18(d).
10. Plaintiff first became disabled as a result of his accepted injury on July 11, 2007, and Plaintiff has been receiving temporary total disability (TTD) compensation at the rate of $287.85 since that date. He continues to receive ongoing TTD compensation.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms (supplemented post-hearing)
 • Exhibit 3: Plaintiff's medical records (supplemented post-hearing)
 • Exhibit 4: Six DVDs of surveillance footage
 • Exhibit 5: Correspondence from Plaintiff's counsel to Defendants
 • Exhibit 6: Accident report dated 7/14/08
Transcripts of the depositions of the following were also received:
 • Julie Dubas (with Exhibit 1)
 • Dr. Leonard Nelson (with Exhibits 1 2) *Page 4 
 • Dr. Robert Lacin, Volume 1 (with Defendants' Exhibits 1-3)
 • Dr. Robert Lacin, Volume 2 (with Plaintiff's Exhibits 1-3)
 • Linwood Parker
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 49 years old, with a date of birth of April 27, 1961. Prior to sustaining his compensable low back injury in this claim, Plaintiff worked exclusively in carpentry work for approximately 30 years. He has a tenth grade education.
2. Before the date of injury in this claim, July 3, 2007, Plaintiff had never had a problem with his lower back or legs.
3. Plaintiff has lived at the White Swan Motel, in Smithfield, North Carolina, since late 2005. The motel is owned by Linwood Parker. About six months after Plaintiff moved into the White Swan Motel, he had financial problems. Mr. Parker agreed that Plaintiff could live at the motel rent-free as long as Plaintiff would handle the maintenance responsibilities at the motel and occasionally at Mr. Parker's home. Plaintiff never had any trouble physically handling these maintenance responsibilities before he sustained his compensable injury in this claim. Before the injury, Plaintiff spent about three hours every weekday and all day on the weekends handling the maintenance responsibilities.
4. On July 3, 2007, while he was working for Defendant-Employer, Plaintiff injured his low back when a co-worker dropped the end of a piece of sheetrock that they were carrying. Plaintiff tried to keep the sheetrock from hitting the ground and breaking and in doing so twisted *Page 5 
and injured his back.
5. From July 3, 2007 and continuing through the date of the hearing before the Deputy Commissioner, Plaintiff had pain in his lower back radiating into his right leg. In early 2008, Plaintiff also began having pain in his left leg, which also continued through the date of the hearing before the Deputy Commissioner.
6. After Plaintiff received some initial treatment for his compensable low back injury with Dr. Raghu Kataru, a family practitioner, Plaintiff began treating with Dr. Nelson, an orthopedic surgeon.
7. Plaintiff first saw Dr. Nelson on August 29, 2007 and continues to treat with him. Dr. Nelson diagnosed Plaintiff with lumbar spinal stenosis, worse at L4-5. As Dr. Nelson explained, the spinal stenosis involves the narrowing of the spinal canal and the impinging or pinching of the nerve roots. He recommended a lumbar decompression surgery for Plaintiff to address his leg pain, which Defendants have denied. Dr. Nelson placed Plaintiff on sedentary work restrictions.
8. Upon Dr. Nelson's recommendation, Plaintiff returned to Dr. Kataru for pain medications beginning in May 2008 and has continued to see Dr. Kataru for that purpose. Plaintiff has paid for Dr. Kataru's treatment and the prescriptions out of his own pocket. Plaintiff has asked Defendant-Carrier to authorize pain management for him several times, but Defendant-Carrier has not done so despite Dr. Nelson's recommendations.
9. On December 31, 2008, Plaintiff underwent a functional capacity evaluation (FCE) with Julie Dubas, an occupational therapist. Ms. Dubas concluded that the FCE was invalid because, in her estimation, Plaintiff failed to show consistent effort and engaged in symptom exaggeration. The testing results showed Plaintiff could perform at the sedentary *Page 6 
10. exertion level, but Ms. Dubas felt that Plaintiff could have done more. However, Ms. Dubas confirmed that she believed that Plaintiff self-limited because of his pain and apprehension, and she did not believe that Plaintiff had malingered. She did not doubt that Plaintiff was in pain during the FCE, and she could not say that Plaintiff could perform a full-time job.
11. After Plaintiff sustained his compensable injury, he did not perform his maintenance responsibilities around the White Swan Motel for a period of time. A few months later, Mr. Parker told Plaintiff that he would have to do what he could around the motel or leave. Plaintiff told Dr. Nelson about his maintenance responsibilities, and Dr. Nelson encouraged him to do as much as he could. Plaintiff resumed his maintenance responsibilities to the extent that he was able to do so with his low back symptoms, and notified Defendant-Carrier of the same.
12. Since he resumed his maintenance duties, Plaintiff has been able to work only two or three hours at a time without suffering great pain. Generally, after he works for a little while, Plaintiff lies down. He occasionally lifts over ten pounds, but his pain is aggravated by doing so. Mr. Parker believes that Plaintiff has done the best he can and noted, "If I thought he was giving me a runaround, I'd have run him off." Mr. Parker allows Plaintiff to work within his physical limitations for limited hours and has provided him with a helper.
13. Plaintiff has tried to find other employment since sustaining his compensable injury. He has unsuccessfully pursued construction work with several people he knows and has been to the Employment Security Commission several times.
14. Plaintiff does not believe he can do work on back-to-back days or work an eight-hour day with his current level of low back and leg pain.
15. Defendants retained a private investigator to conduct surveillance of Plaintiff. The investigator watched Plaintiff for a total of 118.5 hours over five three-day periods in *Page 7 
16. December 2007, January 2008, February 2009, and April 2009. The investigator filmed about eight hours of video footage of Plaintiff. Of that footage, the investigator felt that about 13 minutes of it showed Plaintiff engaging in activities that the investigator felt were outside of Plaintiff's restrictions. The most significant activity that the footage shows Plaintiff doing is getting on a ladder and replacing a single thin fascia board on Mr. Parker's house over the course of about two hours. The investigator did not document Plaintiff engaging in any significant sustained activity.
17. Plaintiff was a passenger in a vehicle involved in an accident on July 14, 2008, but there is no medical evidence of record that Plaintiff's compensable low back condition was worsened by said accident.
18. Dr. Nelson, an orthopedic surgeon, has completed a spine fellowship and performs spinal surgeries as 90% to 95% percent of his practice. Dr. Nelson testified, within a reasonable degree of medical certainty, that the July 3, 2007 sheetrock incident produced a symptomatic aggravation of Plaintiff's pre-existing lumbar spinal stenosis and caused the low back and leg symptoms for which Dr. Nelson has continuously treated Plaintiff. Dr. Nelson further testified that he believes that a lumbar decompression procedure has a reasonable chance of relieving Plaintiff's leg pain.
19. Dr. Nelson considered, in his deposition, that Plaintiff had pre-existing cervical problems and a history of depression and possible substance abuse. He agreed that surgery was less likely to be successful for someone with depression and/or substance abuse problems, but he still recommended the surgery for Plaintiff. Dr. Nelson noted that Plaintiff had reported that lumbar epidural steroid injections provided him with significant relief of his symptoms, which was a strong indicator to Dr. Nelson that surgery would succeed. *Page 8 
20. The possibility that Plaintiff is suffering from unrelated cervical myelopathy did not change Dr. Nelson's opinions as to causation or treatment recommendations for Plaintiff's low back condition.
21. Dr. Nelson confirmed that he has objective reasons to believe that Plaintiff does have low back pain and leg pain, including MRIs that showed moderate spinal stenosis. He was certain that Plaintiff has nerve root impingement. He noted that spinal stenosis is a condition that frequently produces a normal physical exam but would flare up into nagging pain whenever the patient exerted.
22. Dr. Nelson reviewed the surveillance footage, Dr. Lacin's deposition transcript, and the FCE report. He did not believe that the surveillance footage showed Plaintiff engaging in any activities that were inconsistent with significantly disabling spinal stenosis.
23. Given Plaintiff's history, Dr. Nelson confirmed that he would not be comfortable prescribing strong narcotics for Plaintiff, but he also stated that Plaintiff may need a comprehensive pain management program for his low back condition.
24. Dr. Lacin is a neurosurgeon. After the hearing of this matter, Dr. Lacin saw Plaintiff for a one-time independent medical examination (IME) and spent about 30 minutes with him. He also reviewed Plaintiff's medical records, the FCE, and the surveillance footage. Dr. Lacin testified that he had no diagnosis for Plaintiff, nor any treatment recommendations. He also opined that Plaintiff had no work restrictions.
25. Dr. Lacin stressed that he feels constrained by insurance companies and the federal government to practice evidence-based medicine. He noted that Plaintiff's MRIs do not show any traumatic etiology, such as a disc herniation or fracture, superimposed over Plaintiff's degenerative condition. As such, he stated that Plaintiff had no condition, either by cause or *Page 9 
26. aggravation, that related to the July 3, 2007 sheetrock incident. Dr. Lacin did not believe that cervical stenosis could be aggravated by any kind of trauma absent some traumatic insult also happening, but he admitted that he knew of no scientific study to support that assertion and that other physicians disagree with him on this point.
27. Dr. Lacin opined that Plaintiff's leg symptoms were possibly related to his cervical condition. He did not see any evidence of nerve root impingement or pinching on the lumber MRIs.
28. Dr. Lacin testified that he based his opinions solely on the symptoms that Plaintiff reported on the date of the IME and that seeing a patient several times would allow a physician to consider a greater range of the patient's symptoms.
29. Dr. Lacin felt that Plaintiff's activities in the surveillance footage were inconsistent with someone suffering from symptomatic lumbar stenosis.
30. The Full Commission gives greater weight to the testimony and opinions of Dr. Nelson than those of Dr. Lacin. Dr. Nelson, as the treating physician, has seen Plaintiff many times over the course of many months, while Dr. Lacin saw Plaintiff once. Further, Dr. Lacin appears to have largely ignored Plaintiff's reported pain.
31. The treatment that Plaintiff has received from Drs. Nelson and Kataru for his compensable low back condition has been reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability related to said condition.
32. Plaintiff is not at maximum medical improvement for his compensable low back condition, and further treatment, including but not limited to the surgery and pain management recommended by Dr. Nelson, is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability related to his work injury. *Page 10 
33. The surveillance footage, FCE, and the limited work that Plaintiff has done in exchange for his ongoing room do not show substantial wage-earning capacity on Plaintiff's part.
34. The Full Commission finds that due to Plaintiff's ongoing compensable low back condition, physical limitations, and limited education and work experience it would be futile at this time for him to seek employment. Therefore, the Full Commission finds that Plaintiff continues to be disabled.
35. Defendants' defense of this claim has been reasonable and does not constitute stubborn and unfounded litigiousness under N.C. Gen. Stat. § 97-88.1.
36. As Defendants appealed this matter to the Full Commission, and the Full Commission is ordering Defendants to continue payment of benefits, the Full Commission may award that the cost to Plaintiff of the Full Commission hearing, including a reasonable attorney's fee, be paid by Defendant as part of the costs pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The aggravation of a pre-existing condition that results in the loss of wage earning capacity is a compensable injury. Smith v.Champion Int'l, 134 N.C. App. 180, 517 S.E.2d 164 (1999);Hoyle v. Carolina Associated Mills,122 N.C. App. 462, 470 S.E.2d 357 (1996). Plaintiff sustained a compensable aggravation of his pre-existing lumbar stenosis condition in the sheetrock incident on July 3, 2007. The incident aggravated Plaintiff's pre-existing condition, causing it to become symptomatic to the point of disabling Plaintiff from suitable employment. *Page 11 
N.C. Gen. Stat. § 97-2(6).
2. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity.Russell v. Lowes Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distrib., supra.
3. Plaintiff has shown that he continues to be disabled due to his compensable low back condition in that it would be futile at this time for him to seek employment comporting with his physical limitations because of his limited education and work experience. As such, Plaintiff remains entitled to ongoing TTD compensation. N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distrib.,supra.
4. As Defendants accepted Plaintiff's low back claim, Plaintiff is entitled to a *Page 12 
5. rebuttable presumption that further medical treatment related to his low back condition is directly related to the original compensable low back injury. Defendants admitted as much in their Contentions. Perez v. Amer. Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005).
6. By the greater weight of the evidence, Defendants have not rebutted the presumption of the compensability of Plaintiff's current low back condition. Rather, Plaintiff has shown that his current low back condition is causally related to the July 3, 2007 injury. Id.
7. Plaintiff is entitled to have Defendants pay for the treatment that he has heretofore received for his compensable low back condition with Drs. Nelson and/or Kataru, including but not limited to diagnostic testing and imaging, prescriptions, physical therapy, injections, and mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
8. Plaintiff is also entitled to have Defendants authorize and pay for the treatment that Dr. Nelson recommends for his compensable low back condition, including but not limited to diagnostic testing and imaging, surgery, prescriptions, physical therapy, pain management, referrals and mileage. Id.
9. Defendants' defense of this claim has been reasonable and does not constitute stubborn and unfounded litigiousness. As such, Plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
10. Plaintiff's counsel is entitled to a reasonable attorney's fee for the time spent in defending this claim before the Full Commission. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law the Full Commission enters the following:
 AWARD *Page 13 
1. Defendants shall continue to pay Plaintiff ongoing weekly TTD payments in the amount of $287.85 per week until Plaintiff returns to work or further Order of the Commission. Plaintiff's counsel is entitled to a reasonable attorney's fees of 25% of the amounts due Plaintiff and shall be paid directly to Plaintiff's counsel.
2. To any extent they have not already done so, Defendants shall pay for the treatment that Plaintiff has heretofore received for his compensable low back condition with Drs. Nelson and/or Kataru, including but not limited to diagnostic testing and imaging, prescriptions, physical therapy, injections, and mileage. To any extent that Plaintiff and/or any third-party payor(s) have paid for any such treatment, Defendants shall reimburse such payor(s) in full.
3. Dr. Nelson is hereby designated as Plaintiff's treating physician in this claim, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that Dr. Nelson recommends for Plaintiff's compensable low back condition, including but not limited to diagnostic testing and imaging, surgery, prescriptions, physical therapy, pain management, referrals, and mileage. Defendants shall authorize and pay for the lumbar decompression surgery should Dr. Nelson continue to recommend it for Plaintiff. Should Dr. Nelson continue to recommend pain management for Plaintiff, then the parties shall draft a joint letter to the pain management specialist, including any and all material medical records, to make such specialist aware of Plaintiff's history.
4. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay expert witness fees to each of the providers, the amounts of which were set in orders previously filed by the Deputy Commissioner.
5. Plaintiff's petition for attorney's fees filed on July 27, 2010 in which Plaintiff requests that all of Plaintiff's attorney's fees in this claim be taxed to Defendants pursuant to *Page 14 
N.C. Gen. Stat. § 97-88.1 is hereby DENIED.
6. Pursuant to N.C. Gen. Stat. § 97-88 Plaintiff's counsel is hereby Ordered to file within 15 days of receiving this Opinion and Award an itemized statement of hours spent defending this claim before the Full Commission.
This the 19th day of January 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ LINDA CHEATHAM COMMISSIONER *Page 1